Hartree Partners, LP v Vaquero Permian Processing LLC (2024 NY Slip Op 01779)

Hartree Partners, LP v Vaquero Permian Processing LLC

2024 NY Slip Op 01779

Decided on April 02, 2024

Appellate Division, First Department

MENDEZ, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 02, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Cynthia S. Kern
Jeffrey K. Oing Peter H. Moulton Ellen Gesmer Manuel Mendez

Index No. 651999/21 Appeal No. 1301-1302 Case No. 2023-02272, 2023-03417 

[*1]Hartree Partners, LP, Respondent,
v
Vaquero Permian Processing LLC, Appellant.

Defendant appeals from a judgment, Supreme Court, New York County (Andrew Borrok, J.), entered June 22, 2023, in favor of plaintiff and against defendant in the amount of $9,666,423.30. Defendant's appeal brings up for review, an order, same court and Justice, entered April 11, 2023, which insofar as appealed from, granted plaintiff's motion for summary judgment.

Bailey & Glasser LLP, Port Chester (Elliott McGraw of counsel), and Bailey & Glasser LLP, Washington, DC (Joshua I. Hammack of the bar of the District of Columbia, and State of Maryland, admitted pro hac vice, of counsel), for appellant.
Crowell & Moring LLP, New York (Robert A. Mantel and Melvin A. Brosterman of counsel), for respondent.

MENDEZ, J. 

Vaquero Permian Processing LLC, a midstream processer and seller of natural gas and Hartree Partners, LP entered into an agreement for the delivery of gas on July 11, 2019, using the Northern American Energy Standards Board approved form Base Contract for Sale and Purchase of Natural Gas. On October 22, 2019, the parties entered into a physical natural gas contract, which incorporated the base agreement and provided that Vaquero would deliver 50,000 MMBtu of gas per day to Hartree during the period from April 1, 2020, through March 31, 2021. During this period the parties entered into approximately 20 "buyback"[FN1] agreements wherein Vaquero purchased from Hartree some of the MMBtu of gas it was supposed to deliver.
On February 12, 2021, through a series of ICE chats [FN2] initiated by Vaquero the parties entered into a buyback agreement in anticipation of the approaching Winter Storm Uri because Vaquero was concerned that as a result of the storm it would be unable to deliver the daily 50,000 MMBtu during the four-day period from February 13 through 16, 2021, as required by the October 2019 contract. Under the terms of the February 12, 2021 buyback agreement, the volume of gas to be delivered by Vaquero was reduced to 35,000 MMBtu per day and Vaquero was to buy back 15,000 MMBtu per day from Hartree during that same period.
Winter Storm Uri resulted in below freezing temperatures in Texas and caused a shutdown of operations for the gas industry in that state during the period covered by the February 12, 2021, buyback agreement.
On February 13, 2021, Vaquero satisfied the terms of the buyback agreement by delivering the required 35,000 MMBtu of gas to Hartree that day and purchasing from Hartree the 15,000 MMBtu of gas it was unable to deliver.
On February 14, 2021, due to the inclement weather, Vaquero was unable to deliver the day's 35,000 MMBtu of gas. Through a series of texts between its representatives and Hartree's representative, Vaquero requested that Hartree accept a reduction of an additional 10,000 MMBtu in the supply of gas it would receive from Vaquero on that day (instead of 35,000 MMBtu, Vaquero could now only supply 25,000 MMBtu of gas). Vaquero also stated that it would declare a force majeure in accordance with section [*2]11 of the July 11, 2019 base agreement and issue notices "asking all markets to reduce by 50% for today's gas day." Vaquero cancelled delivery of the remaining 10,000 MMBtu of gas that day and attempted to cancel that day's buyback agreement.
Vaquero's plant lost power between February 15 and 17, 2021, and it sent similar force majeure declaration notices for February 15 and 16, 2021 "due to inclement weather conditions," asking "all markets to reduce by 100% for today's gas day." Vaquero did not physically deliver any natural gas to Hartree on those two days. Hartree accepted the force majeure declaration and the 10,000 MMBtu reduction for February 14, 2021, but not the cancellation of the agreement to buy back 15,000 MMBtu of gas for that day or for any other day.
On March 5, 2021, Hartree received an invoice from Vaquero for $505,665.48 based on Hartree's gas purchases in February 2021. The invoice identified $2,828,630.48 in gas purchases made by Hartree, with most days in February listed as having sold 50,000 MMBtu of gas for $123,000. For the days in question, the invoice identified: 50,000 MMBtu of gas purchased by Hartree on February 13, 2021, with a credit of $2,322,975.00 for 15,000 MMBtu of gas purchased by Vaquero from Hartree; 25,000 MMBtu of gas purchased by Hartree on February 14, 2021; and no gas purchased by Hartree on February 15 and 16, 2021. There was no credit for the buyback of 15,000 MMBtu of gas by Vaquero on those days.
On March 10, 2021, Hartree issued its own invoice to Vaquero for February 2021 for $6,352,569.96 stating that for the month of February Hartree owed Vaquero $2,939,330.04 based on Hartree's gas purchases, but this amount would be offset by $9,291,900 that Vaquero owed Hartree based on the February 2021 buyback agreement.
Hartree commenced this action on March 25, 2021, asserting a cause of action for breach of contract, alleging that Vaquero breached the February 12, 2021 buyback agreement. Hartree moved for summary judgment upon completion of discovery and Supreme Court granted its motion, determining, as relevant to this appeal, that the February 12, 2021 buyback agreement was a valid contract entered into in contemplation of a known risk, specifically, Winter Storm Uri, and that the risked event had occurred. Supreme Court determined that the buyback agreement required purely financial performance for a known contingency, and Vaquero's attempt to read additional terms or delivery requirements did not excuse performance. Supreme Court further determined that the February 12, 2021 buyback agreement was created for a limited time period, February 13—16, 2021, and in anticipation of Vaquero's inability to satisfy the October 2019 contract by delivering the required 50,000 MMBtu of gas to Hartree because of the approaching winter storm.
Hartree established prima facie entitlement to summary judgment on its breach of contract claim by establishing that it and Vaquero entered into a valid buyback agreement [*3]whereby Vaquero agreed to "buy back" 15,000 MMBtu of natural gas for a four-day period, thereby reducing Vaquero's obligations to deliver natural gas to Hartree by 15,000 MMBtu daily during that period. Hartree also established that Vaquero failed to pay Hartree pursuant to the agreement, causing damages (see Vision China Media Inc. v Shareholder Representative Servs., LLC, 109 AD3d 49, 58 [1st Dept 2013]).
Vaquero argues that the buyback agreement was contingent on its existing obligation to deliver 50,000 MMBtu of natural gas per day to Hartree pursuant to the October 2019, contract which incorporated the parties July 11, 2019 base agreement; that Vaquero was relieved of that obligation by exercising its contractual right to declare force majeure as a result of Winter Storm Uri, which prevented Vaquero from delivering gas between February 14 and 16, 2021; and that the elimination of this underlying obligation also eliminated its obligations under the buyback. These arguments are unavailing. Vaquero cites to no persuasive evidence that supports its position.
To the extent that Vaquero argues that its force majeure declaration eliminated its obligations under the buyback, the argument fails. The parties agree that the buyback did not require any physical delivery of gas, and created only a financial obligation. Indeed, Vaquero's witnesses conceded at their depositions that the February 12, 2021, buyback was a purely financial agreement, with no physical delivery expected from either party. The mere fact that Vaquero had no gas to sell did not relieve it of its financial obligation to Hartree under the February 12, 2021 buyback agreement which did not contain a force majeure provision (see Macalloy Corp. v Metallurg, Inc., 284 AD2d 227, 227 [1st Dept 2001]). Moreover, the parties are sophisticated entities familiar with the natural gas industry and had a prior history of buyback arrangements. The February 12, 2021, buyback agreement, similar to the parties' other buyback agreements, created an independent carve out that, because no physical delivery of gas was required, is not affected by the force majeure provisions of the base agreement (see Ashwood Capital, Inc v OTG Mgt. Inc., 99 AD3d 1, 8-9 [1st Dept 2012]).
The ICE chats make no reference to any obligation by Hartree to deliver natural gas to Vaquero on February 13-16, 2021, or to the force majeure provisions of the base agreement. The February 12, 2021 buyback agreement cannot be interpreted to include conditions or language that would distort its meaning or alter the parties' reasonable expectations at the time it was entered (see Beardslee v Inflection Energy, LLC, 25 NY3d 150, 157-159 [2015]). Moreover, a finding that Vaquero did not need to perform under the buyback agreement because it was unable to deliver gas during the period in question, the very reason it and Hartree entered into the buyback agreement in the first place, would not make any sense (Cole v Macklowe, 99 AD3d 595[*4], 596 [1st Dept 2012]).
To the extent Vaquero argues that Hartree accepted the cancellation of the buyback agreement, it submits no corroborating evidence of the purported cancellation, other than its witness' self-serving, internally inconsistent, and uncorroborated testimony (Cicardo Natl., Inc. v Loeb, 220 AD3d 615 [1st Dept 2023] citing Carthen v Sherman, 169 AD3d 416, 417 [1st Dept 2019]). Vaquero failed to raise a material issue of fact requiring denial of plaintiff's motion (see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]).
Accordingly, the judgment of the Supreme Court, New York County (Andrew Borrok, J.), entered June 22, 2023, in favor of plaintiff and against defendant in the amount of $9,666,423.30, and bringing up for review, an order, same court and Justice, entered April 11, 2023, which insofar as appealed from, granted plaintiff's motion for summary judgment, should be affirmed, without costs. Appeal from aforesaid order, unanimously dismissed, without costs as subsumed in the appeal from the judgment.
Judgment, Supreme Court, New York County (Andrew Borrok, J.), entered June 22, 2023, should be affirmed, without costs. Appeal from aforesaid order, unanimously dismissed, without costs as subsumed in the appeal from the judgment.
Opinion by Mendez, J. All concur.
Kern, J.P., Oing, Moulton, Gesmer, Mendez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 2, 2024

Footnotes

Footnote 1: Under a "buyback" a seller reduces the volume of gas it was obligated to deliver to a buyer by purchasing from the buyer the amount it could not deliver. A seller enters into a buyback agreement because it does not have a sufficient supply of gas to deliver under the contract.

Footnote 2: An ICE chat is an Inter-Continental Exchange that facilitates electronic communications between buyers and sellers of gas products and allows for the creation of a contract.